**DISTRICT OF COLUMBIA,
et al., Appellants,**

v.

**Monica GALLAGHER, Appellee.**

No. 97–CV–1138.

District of Columbia Court of Appeals.

Argued Nov. 5, 1998.
Decided July 29, 1999.

---

Leo N. Gorman, Washington, DC, for appellants. Jo Anne Robinson, Principal Deputy Corporation Counsel, Charles L. Reischel, Deputy Corporation Counsel, and Martin B. White, Assistant Corporation Counsel at the time the brief was filed, were on the brief for appellants.

St. John Barrett, Washington, for appellee.

Before TERRY and RUIZ, Associate Judges, and GALLAGHER, Senior Judge.

TERRY, Associate Judge:

Appellee Monica Gallagher is the former wife of the late David Norman, a retired judge of the Superior Court at the time of his death in 1995. After Judge Norman died, Ms. Gallagher submitted an application for a survivor annuity to the District of Columbia Office of Personnel. Her application was denied because she and Judge Norman had been divorced in 1987, and the Personnel Office concluded that it was not authorized to award survivor annuities to former spouses of government employees who were divorced before March 16, 1989, the effective date of the

District of Columbia Spouse Equity Act, D.C.Code §§ 1–3001 *et seq.* (1992). The trial court ruled that the District was not precluded from awarding appellee a survivor annuity, and that its failure to do so in this case was an abuse of discretion. The court therefore granted Ms. Gallagher's motion for summary judgment and ordered the District to pay her a survivor annuity. We hold that the Spouse Equity Act bars such payments, and thus we reverse the judgment in Ms. Gallagher's favor and remand with directions to enter judgment for the District.

## I

In May 1973 David Norman was appointed to be a judge of the Superior Court. He elected to participate in the survivor annuity program established by the District of Columbia Judges' Retirement Fund. *See* D.C.Code § 1–714 (1992). Under that program, a survivor annuity would be paid upon Judge Norman's death to his wife, Ms. Gallagher, whom he had married in 1968. When he retired from the bench in 1983, Judge Norman chose to continue participating in the program.

On December 29, 1987, Judge Norman and Ms. Gallagher were divorced. The divorce decree stated in part: "As part of the parties' wishes, each shall maintain all vested and survivorship interests in each other's pension and retirement benefits, as well as any present interest in life and health insurance." Although the retirement program permitted Judge Norman to withdraw from participation and collect a lump sum upon his divorce, *see* D.C.Code § 11–1566(b) (1995), he continued making payments into the fund until he passed away on February 6, 1995.

Two weeks after the judge's death, Ms. Gallagher submitted an application for a survivor annuity to the District of Columbia Office of Personnel. Until the enactment of the Spouse Equity Act ("the Act"), former spouses of District employees were

not eligible to receive retirement benefits. Under the Act, however, the District is now required to award retirement benefits to former spouses in compliance with "qualifying court orders," including divorce decrees.[1] Section 1–3003(b) of the Act states that "[t]he Mayor shall comply with any qualifying court order that is issued prior to the employee's retirement," while section 1–3003(c) provides that "[t]he Mayor shall comply with any qualifying court order that is issued after the employee's retirement ... to the extent it is consistent with any election previously executed at the time of retirement by the employee regarding that former spouse."

An exception to the general requirement of compliance with divorce decrees is found in section 1–3003(d), which states that the District "is not obligated to comply with qualifying court orders issued prior to March 16, 1989," the effective date of the Act. Citing this provision, the Director of the Office of Personnel denied Ms. Gallagher's application, claiming that she was not entitled to receive an annuity because she and Judge Norman had been divorced in December 1987. Ms. Gallagher filed an appeal with the Mayor's office. When the Mayor failed to act, she filed suit in the Superior Court against the District and the Director of the Office of Personnel, seeking a declaratory judgment establishing her entitlement to a survivor annuity and a mandatory injunction directing the District to award her an annuity.

In granting Ms. Gallagher's motion for summary judgment, the trial court interpreted section 1–3003(d) as authorizing, though not requiring, the Mayor to grant survivor benefits to former spouses in compliance with pre-Act decrees. Observing that "[t]he purpose of the Spouse Equity Act is to ensure that former spouses, not only widows, receive survivor benefits if that is what a judge intends," the court concluded that Judge Norman intended the annuity to be paid to Ms. Gallagher.

---

1. It is undisputed that the divorce decree in this case is a "qualifying court order." *See*

D.C.Code § 1–3002(c) (1992).

Evidence of his intent was found in the language of the divorce decree and in the fact that the judge elected not to withdraw from the survivor annuity program after his divorce, even though he neither remarried nor had any dependent children.[2] The court also expressed the belief that if the annuity were not awarded to Ms. Gallagher, the District would receive a windfall: "The District should not be allowed to reap a benefit it does not deserve from Judge Norman's failure to realize ... the intricacies of the Spouse Equity Act and the difficulty his former wife might encounter after his death." The court then ordered the Mayor's office to grant Ms. Gallagher a survivor annuity because "[a]ny other result would be an injustice." From that order the District brings this appeal.

## II

 The outcome of this case turns on the meaning of the words "not obligated to" in section 1–3003(d) of the Spouse Equity Act.[3] The District argues that this language prohibits the Mayor from complying with pre-Act divorce decrees. According to the District, section 1–3003(d) creates an explicit exception to the requirement of compliance with court orders, leaving the Act with no effect on orders issued before its effective date. Therefore, says the District, pre-Act decrees are governed by pre-Act law, which did not authorize the Mayor to award survivor benefits to former spouses. Ms. Gallagher, on the other hand, contends that the statute neither forbids nor requires such compliance, but rather leaves it to the

2. The judge had an adult daughter from a prior marriage, but she did not qualify as a "child" eligible to receive an annuity under D.C.Code § 11–1568(c) because she was no longer a dependent. See D.C.Code § 11–1561(8) (defining "child").

3. D.C.Code § 1–3003(d) provides:
 The Mayor is not obligated to comply with qualifying court orders issued prior to March 16, 1989.

4. In a novel argument, Ms. Gallagher also asserts that the Mayor's failure to issue rules

Mayor's discretion. She maintains that both the plain meaning and the legislative history of section 1–3003(d) support the conclusion that the Mayor is authorized, albeit not "obligated," to effectuate pre-Act decrees. Therefore, she argues, the Act vests the Mayor with discretion to decide whether, and under what circumstances, to comply with pre-Act decrees.[4]

 We review the trial court's construction of the Act *de novo*, but at the same time we give deference to the interpretation adopted by the agency that administers the Act. *See, e.g., Smith v. District of Columbia Dep't of Employment Services*, 548 A.2d 95, 97 (D.C.1988) (citing cases). As always, our first task when called upon to choose between two conflicting interpretations of a statutory provision is to examine the statute itself, so as to determine whether its language is ambiguous. "The primary and general rule of statutory construction is that the intent of the lawmaker is to be found in the language that he has used." *United States v. Goldenberg*, 168 U.S. 95, 102–103, 18 S.Ct. 3, 42 L.Ed. 394 (1897); *accord, e.g., James Parreco & Son v. District of Columbia Rental Housing Comm'n*, 567 A.2d 43, 46 (D.C.1989); *Varela v. Hi–Lo Powered Stirrups, Inc.*, 424 A.2d 61, 64–65 (D.C. 1980) (en banc). Moreover, "[t]he words of the statute should be construed according to their ordinary sense and with the meaning commonly attributed to them." *Davis v. United States*, 397 A.2d 951, 956 (D.C.1979); *accord, e.g., Peoples Drug Stores, Inc. v. District of Columbia*, 470 A.2d 751, 753 (D.C.1983) (en banc).

"to implement the provisions of [the Act]," as required by section 1–3005, somehow authorizes a court to substitute its judgment for the Mayor's exercise of discretion under section 1–3003(d). She cites no authority for this proposition, and we find her argument unconvincing. Moreover, because we interpret the statute as conferring no discretion on the Mayor to award survivor annuities in accordance with pre-Act decrees, we conclude that the Mayor's failure to promulgate rules had no effect on the denial of her claim.

### A. The Plain Meaning of Section 1–3003(d)

The District argues that the words "not obligated to" should be construed to mean that the Mayor "may not" comply with pre-Act decrees, while Ms. Gallagher contends that those words mean simply that the Mayor is "not required to" comply with such decrees, though he "may" do so in his discretion. At first glance, Ms. Gallagher's interpretation seems considerably closer to the plain meaning of the statutory language than does the District's.[5]

Ms. Gallagher also maintains that if the Council of the District of Columbia had intended the statute to mean that the Mayor "may not" comply with pre-Act decrees, it could have used language to that effect. Other parts of the Act clearly show that the Council know how to use mandatory (or prohibitory) language when it so desired. For example, the two subsections immediately preceding subsection (d) both use the word "shall" to indicate that compliance with divorce decrees in certain circumstances is mandatory. The Mayor retains no discretion when a decree comes within the ambit of one of those two subsections.[6] If the Council had used the words "shall not" in subsection (d), it could have similarly eliminated any discretion that the Mayor might have with respect to pre-Act decrees. Alternatively, the Council could have used language similar to that found in section 1–3004(d), which states that "[o]nly former spouses whose marriages were dissolved after March 16, 1989, through divorce, annulment, or legal separation shall be eligible to enroll in the health benefit plans." The fact that sections 1–3003(d) and 1–3004(d) were simultaneously included in the Act adds weight to Ms. Gallagher's argument that the Council's failure to avail itself of either of these options for drafting section 1–3003(d) in mandatory terms was not accidental, but rather reflects an intent to give the Mayor some discretion with respect to awarding survivor benefits in compliance with pre-Act decrees.

When the plain meaning of the statutory language is unambiguous, the intent of the legislature is clear, and judicial inquiry need go no further. *See, e.g., Burgess v. United States,* 681 A.2d 1090, 1095 (D.C.1996); *Luck v. District of Columbia,* 617 A.2d 509, 512 (D.C.1992); *Barry v. Bush,* 581 A.2d 308, 314 (D.C.1990). The literal words of a statute, however, are "not the sole index to legislative intent," *Lange v. United States,* 143 U.S.App. D.C. 305, 307, 443 F.2d 720, 722 (1971), but rather are "to be read in the light of the purpose of the statute taken as a whole, and are to be given a sensible construction and one that would not work an obvious injustice." *Metzler v. Edwards,* 53 A.2d 42, 44 (D.C.1947) (footnotes omitted); *see also Tillinghast v. Tillinghast,* 58 App. D.C. 107, 109, 25 F.2d 531, 533 (1928). The Supreme Court has observed that even when the words of a statute may appear, on "superficial examination," to be clear and unambiguous, "[w]ords are inexact tools at best, and for that reason there is wisely no rule of law forbidding resort to explanatory legislative history . . . ." *Harrison v. Northern Trust Co.,* 317 U.S. 476, 479, 63 S.Ct. 361, 87 L.Ed. 407 (1943) (citations omitted); *accord, e.g., Citizens Ass'n of Georgetown v. Zoning Comm'n,* 392 A.2d 1027, 1033 (D.C.1978) (en banc). The Court has also declared that "the plain-meaning rule is 'rather an axiom of experience than a rule of law, and does not preclude consideration of persuasive evi-

---

**5.** "Obligate" is defined as "to constrain or bind to some course of action." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 1556 (1976).

**6.** D.C.Code § 1–3003(b) and (c) provide in part:

(b) The Mayor shall comply with any qualifying court order that is issued prior to the employee's retirement. . . .

(c) The Mayor shall comply with any qualifying court order that is issued after the employee's retirement only to the extent it is consistent with any election previously executed at the time of retirement by the employee regarding that former spouse. . . .

dence if it exists.' " *Public Citizen v. United States Dep't of Justice,* 491 U.S. 440, 455, 109 S.Ct. 2558, 105 L.Ed.2d 377 (1989) (citations omitted).

■ Upon further examination, we conclude that the meaning of subsection (d) is not as clear and unambiguous as it first appears. While the statute does not explicitly state that the Mayor "shall not" comply with pre-Act decrees or that former spouses divorced before the effective date of the Act are "not eligible" for annuities, neither does it say that the Mayor "may or may not" comply with pre-Act decrees, or that such former spouses "shall be eligible" to receive annuities, or that the Mayor "shall have discretion" to award them annuities. In such circumstances, it is our responsibility to examine the legislative history so that we may discern the overall legislative purpose and construe the statute accordingly. *See NLRB v. Lion Oil Co.,* 352 U.S. 282, 297, 77 S.Ct. 330, 1 L.Ed.2d 331 (1957) (Frankfurter, J., concurring in part); *Staub v. Office of Personnel Management,* 927 F.2d 571, 573 (Fed.Cir.1991).

### B. *Legislative Intent*

■ We first apply the "canon of statutory interpretation that one looks at the particular statutory language within the context of the whole legislative scheme when legislative intent is to be determined." *Citizens Ass'n of Georgetown,* 392 A.2d at 1033 (citation omitted). "This court will not give effect to a plain language interpretation which is 'plainly at variance with the policy of the legislation as a whole.' " *In re G.G.,* 667 A.2d 1331, 1334 (D.C.1995) (citation omitted); *accord, e.g., James Parreco & Son,* 567 A.2d at 46.

Ms. Gallagher advances two arguments in support of her claim that the Council intended to vest the Mayor with discretion to award survivor annuities in certain circumstances to former spouses who were divorced before the effective date of the Spouse Equity Act. First, she asserts that

the beneficent purposes of the Act favor a construction permitting the award of annuities to at least some former spouses in her position. Second, she points to a statement in the legislative history that the Act was intended to conform "as much as possible" to the federal Civil Service Retirement Spouse Equity Act, which does not contain any language making it inapplicable to pre-Act divorce decrees.

We agree that the Act is a remedial statute and that its general purpose is to provide economic protection to former spouses of District employees. In its report on the bill which became the Spouse Equity Act, the Council's Committee on Government Operations said:

> [T]he city cannot currently honor court orders regarding retirement benefits in divorce situations because [under the current retirement system] it is not authorized to pay those benefits to anyone other than the employee/retiree or a current spouse eligible for a survivor annuity. Court orders purporting to award a survivor annuity to a former spouse are currently unenforceable against the District. . . . [I]f the employee/retiree subsequently dies, the former spouse has no recourse.

Council Of The District Of Columbia, Report On Bill 7–389, "District Of Columbia Spouse Equity Amendment Act Of 1988," at 2 (October 27, 1988) (hereafter "Report"). To remedy the perceived inequity of this situation, the Act requires the Mayor to comply with divorce decrees awarding survivor annuities to former spouses. *Id.*

While this may have been the general purpose of the statute as a whole, a closer examination of the history of section 1–3003(d) reveals that its specific purpose was to limit the scope of the remedial protection provided to former spouses so as to minimize the potential financial impact of the Act.[7] As first proposed, the bill did not contain any restriction on the date of a qualifying court order. As the bill

---

7. The Spouse Equity Act, as amended, applies to all of the District's retirement systems, not

just that established for the judges of the

moved through the legislative process, however, the Committee was alerted to concerns about the potential financial liability that would result if the bill were enacted as originally drafted. REPORT at 3.

Shortly thereafter the Committee added sections 1–3003(d) and 1–3004(d) to the bill. As we have noted, section 1–3004(d) provides that former spouses who were divorced before the effective date of the Act are not eligible to receive health benefits, while section 1–3003(d) states that the Mayor is "not obligated to" award them survivor annuities. After making these amendments, the Committee sent the bill to the Council, stressing in its report that the bill "has *no retroactive effect*, i.e., it applies only in situations where the marriage was dissolved and settlements were made after the effective date of the bill." REPORT at 3 (emphasis in original). The report also stated that the bill would provide "that the Mayor shall honor *future* court orders . . . ." *Id.* at 2 (emphasis added).

▌ Ms. Gallagher places much emphasis on the Committee's statement that the Act was intended to conform "as much as possible" to the federal Civil Service Retirement Spouse Equity Act ("the Federal Act"),[8] REPORT at 1, which, according to her, is not restricted in its application to post-Act decrees. The leading case construing the relevant portion of the Federal Act, amending 5 U.S.C. § 8341(b) (1988), does not agree with Ms. Gallagher's interpretation. On the contrary, the court in that case construed the Federal Act to be mostly "prospective in effect, with the survivor benefits being newly available to for-

mer spouses when dissolution of the marriage and the employee's retirement or death occurred *after* . . . the effective date of the Act." *Staub*, 927 F.2d at 572 (emphasis added). As the House Report states, the Federal Act "generally does not apply in the case of retirements or divorces before enactment." H.R. REP. No. 98–1054, 98th Cong., 2d Sess. 11, *reprinted in* 1984 U.S. CODE CONG. & ADMIN. NEWS 5540, 5542 (quoted in *Staub*, 927 F.2d at 573). It does permit a narrowly defined class of former spouses with pre-Act divorce decrees to be awarded survivor benefits, but only if they meet the exacting six-part test imposed by the statute.[9] The *Staub* court concluded that this provision of the statute made it "clear beyond any doubt that Congress intended to provide benefits for pre-enactment circumstances to only a small, known category of persons." 927 F.2d at 573. The enumeration of a specific exception, in other words, only bolstered the argument that the Federal Act was not otherwise applicable to those whose divorces were granted before its enactment. Thus, even if we looked to the Federal Act for guidance in interpreting our own Act, as Ms. Gallagher urges us to do, we might well conclude that the District's Act would not apply retroactively even without the addition of sections 1–3003(d) and 1–3004(d). This would be in keeping with the well-established rule that "[s]tatutes are not to be given retroactive effect or construed to change the status of claims fixed in accordance with earlier provisions unless the legislative purpose so to do plainly appears." *United States v. Magnolia Petroleum Co.*, 276 U.S. 160, 162–163, 48 S.Ct. 236, 72 L.Ed. 509 (1928).

District's courts. Thus the financial impact of making the Act applicable to all divorce decrees, rather than those entered after the effective date of the Act, is potentially quite large.

8. Pub.L. No. 98–615, 98 Stat. 3195 (1984).

9. To qualify, an individual must (1) have been divorced after September 15, 1978; (2) not have remarried before age 55; (3) have been married to the retiree during ten years of

creditable service; (4) be age 50 or older; (5) not be entitled to any other pension (other than social security); and (6) apply for the benefit within two and a half years. H.R. REP. No. 98–1054, *supra* at 11, *reprinted in* 1984 U.S. CODE CONG. & ADMIN. NEWS at 5542 (quoted in *Staub*, 927 F.2d at 573–574). These requirements are no longer part of the statute but are contained in implementing regulations. *See* 5 C.F.R. § 831.683(a) (1999).

Moreover, we are not persuaded that the District's Act should necessarily receive the same interpretation as the Federal Act on the question of retroactivity. The Council's committee report merely stated that the Act was meant to make the District's retirement system conform "as much as possible" to the federal system, not to mirror it in every respect. We find it significant that the Federal Act contains no explicit restrictions comparable to those imposed by sections 1–3003(d) and 1–3004(d) of the District of Columbia Spouse Equity Act. The inclusion of these subsections is persuasive evidence of the Council's intent to ensure that the Act would not apply to divorce decrees issued before March 16, 1989, so as to limit the new law's financial impact.

### III

The legislative history of section 1–3003(d) convinces us that the Council intended to restrict the applicability of the Spouse Equity Act to former spouses whose divorce decrees were entered on or after the effective date of the Act. Thus we interpret section 1–3003(d) as prohibiting the Mayor from awarding survivor annuities in compliance with pre-Act decrees. Accordingly, we reverse the trial court's judgment in favor of Ms. Gallagher and remand the case with directions to enter judgment in favor of the District of Columbia.[10]

*Reversed and remanded.*

---

**10.** As an additional matter, the trial court's assumption that the District would receive a windfall if the annuity is not paid to Ms. Gallagher appears to be unwarranted. When there are no otherwise eligible recipients of a judge's survivor annuity, a lump-sum credit "shall be paid, upon the establishment of a valid claim therefor ... to the child or children of the judge and the descendants of any deceased children by representation ...." D.C.Code § 11–1569(b)(2). "Determination as to the widow, widower, or child of a judge for purposes of this subsection shall be made by the Mayor without regard to the definitions in section 11–1561." *Id.;* see note 2, *supra.* Therefore, although we do not decide the point here, it appears that Judge Norman's survivor annuity may be payable as a lump sum to his surviving adult daughter. If for some reason she is ineligible, or if she does not file a claim, the lump sum would be payable under section 11–1569(b)(2) to other designated family members or to the personal representative of Judge Norman's estate.