**1618 TWENTY–FIRST STREET TENANTS' ASSOCIATION, INC., Appellant,**

v.

**THE PHILLIPS COLLECTION, Appellee.**

No. 02–CV–893.

District of Columbia Court of Appeals.

Argued May 21, 2003.
Decided July 24, 2003.

Eric Rome, Washington, DC, for appellant.

Donald B. Mitchell, with whom Richard A. Newman and Ernest A. Tuckett, III, Washington, DC, were on the brief, for appellee.

Before FARRELL, REID and WASHINGTON, Associate Judges.

WASHINGTON, Associate Judge:

Appellant, 1618 Twenty–First Street Tenants' Association, Inc. ("Tenants' Association"), appeals a decision of the trial court, which found that appellee, The Phillips Collection ("Phillips"), had made a bona fide offer of sale to the Tenants' Association pursuant to the Rental Housing Conversion and Sale Act ("Act"), D.C.Code § 42–3404.02(a) (2001). Finding no error, we affirm.

## I.

The facts in this case are largely not in dispute. They do, however, present a unique scenario and it is useful to briefly review them here. The Phillips Collection is a nonprofit corporation under both D.C. law and § 501(c)(3) of the federal tax code. Phillips owns a building located at 1600 21st Street, N.W., Washington, D.C., which is adjacent to a small fifteen-unit apartment building located at 1618 21st Street, N.W. In May of 1999, Phillips purchased the apartment complex for approximately $1.4 million with the intention of demolishing the building and constructing "The Center for the Study and Appreciation of Modern Art" ("Art Study Center"). It is uncontested that when Phillips bought the apartment complex from the original owners, the tenants were given an opportunity to purchase the property as required under D.C.Code § 42–3404.02 (providing for a first right of refusal). The tenants did not purchase the property and the sale to Phillips closed on February 26, 2001. By August of 2001, Phillips had secured all the necessary zoning to demolish the building and construct the Art Study Center.

After unsuccessfully negotiating with the representative of the tenants' association to have the tenants voluntarily vacate their apartments, Phillips decided to proceed formally under the Rental Housing Conversion and Sale Act. On or about December 5, 2001, Phillips issued a 180–Day Notice to Vacate for Demolition. On or about the same time, Phillips also issued an Offer of Sale and Tenant Opportunity to Purchase Without a Third–Party Contract for Housing Accommodations with Five or More Rental Units pursuant to

D.C.Code §§ 42–3404.02(a),—3404.11. The offer to the tenants was for $7.8 million. This amount reflected what Phillips thought it would have to pay to purchase another property which was both suitable to build the Art Study Center and in close proximity to the 1600 21st Street site. Based on their belief that Phillips' offer was not a "bona fide offer of sale" as required under the statute, the tenants rejected the offer. Phillips then brought this action in the trial court for a declaratory judgment that the $7.8 million offer was a "bona fide offer of sale" under the D.C.Code § 42–3404.02. The trial court, Judge Cheryl M. Long, in a well-reasoned Memorandum Order concluded that $7.8 million was a bona fide offer. Thus, because the bona fide offer was rejected, Phillips was entitled to the property. The Tenants' Association now appeals the trial court's finding that the offer was a "bona fide offer of sale" within the meaning of D.C.Code § 42–3404.02.

## II.

The primary question before us—the meaning of "a bona fide offer of sale"—is one of statutory interpretation, and we review the trial court's answer to that question *de novo. See, e.g., District of Columbia v. Gallagher,* 734 A.2d 1087, 1090 (D.C.1999); *Ashton Gen. P'ship, Inc. v. Federal Data Corp.,* 682 A.2d 629, 632 (D.C.1996). "As a threshold matter, we acknowledge the often stated axiom that 'the words of [a] statute should be construed according to their ordinary sense and with the meaning commonly attributed to them.'" *E.R.B. v. J.H.F.,* 496 A.2d 607, 609 (D.C.1985) (quoting *Davis v. United States,* 397 A.2d 951, 956 (D.C.1979)); *see*

*also United States v. Goldenberg,* 168 U.S. 95, 102–03, 18 S.Ct. 3, 42 L.Ed. 394 (1897); *accord Gallagher,* 734 A.2d at 1090. "When the plain meaning of the statutory language is unambiguous, the intent of the legislature is clear, and judicial inquiry need go no further." *Id.* at 1091. In finding the ordinary meaning, "[t]he use of dictionary definitions is appropriate in interpreting undefined statutory terms." *West End Tenants Ass'n v. George Washington Univ.,* 640 A.2d 718, 727 (D.C.1994) (quoting 2A SINGER, SUTHERLAND STATUTORY CONSTRUCTION § 47.07 (5th ed.1992)). Furthermore, "where Congress borrows terms of art in which are accumulated the legal tradition and meanings of centuries of practice, it presumably knows and adopts the cluster of ideas that were attached to each borrowed word in the body of learning from which it was taken." *Bates v. District of Columbia Bd. of Elections & Ethics,* 625 A.2d 891, 894 (D.C.1993) (quoting *Morissette v. United States,* 342 U.S. 246, 263, 72 S.Ct. 240, 96 L.Ed. 288 (1952)). While we first employ the plain meaning rule to our task of statutory interpretation, we have acknowledged that in certain circumstances it is appropriate to look beyond even the plain and unambiguous language of a statute to understand the legislative intent. *See generally Peoples Drug Stores, Inc. v. District of Columbia,* 470 A.2d 751, 754 (D.C.1983) (citations omitted).

### A. The Rental Housing Conversion and Sale Act

Section 42–3404.02(a), is part of the larger Act. *See* D.C.Code §§ 42–3401.01 *et seq.* The Act's overarching purpose is to protect tenant rights.[1] The Act was passed in

---

1. Section 42–3401.02 states:
    In enacting this chapter, the Council of the District of Columbia supports the following statutory purposes:

(1) To discourage the displacement of tenants through conversion or sale of rental property, and to strengthen the bargaining position of tenants toward that end without

response to the housing crisis in the District of Columbia, during which many residents were left with no home after their rental units were converted to condominiums. These conversions had the greatest effect on the city's low and moderate income families and the elderly population who lived on fixed incomes, in that both groups were "least able to purchase their unit once it converted and [were] least able to compete in a rental market which [was] rapidly increasing in price, while decreasing in available units." *See* COUNCIL OF D.C., COMM. ON HOUSING AND ECONOMIC DEVELOPMENT, REPORT ON BILL 3–222: RENTAL HOUSING CONVERSION AND SALE ACT OF 1980, at 2 (enacted as D.C.Code §§ 42–3401.01 *et seq.*) (hereinafter "COUNCIL REPORT"); *see also* D.C.Code § 42–3401.02(1). The Council's desire to protect tenants' rights is further reflected in § 42–3405.11, which states that "[t]he purposes of this chapter favor resolution of ambiguity by the hearing officer or a court toward the end of strengthening the legal rights of tenants or tenant organizations to the maximum extent permissible under law." *Id.* At the same time, this court may not rewrite the statute to create ambiguity where the "statutory scheme" is "unambiguous" in establishing the meaning of its terms. *Coburn v. Heggestad*, 817 A.2d 813, 823 (D.C.

2003) (construing related provisions of the Act.).

The section of the Act at issue in our case is D.C.Code § 42–3404.02(a), which states that

Before an owner of a housing accommodation may sell the accommodation, or issue a notice of intent to recover possession, or notice to vacate, *for purposes of demolition of discontinuance of housing use,* the owner shall give the tenant an opportunity to purchase the accommodation *at a price and terms which represent a bona fide offer of sale.*

*Id.* (emphasis added). While "bona fide offer of sale" is not defined in the statute, § 42–3404.05 requires that the owner and tenants bargain in good faith. Good faith is absent when an owner fails to "offer the tenant a price or terms at least as favorable as that offered to a third party . . . ." § 42–3404.05(a)(1). Thus, when there is a third-party contract, the statute implicitly requires that the bona fide offer be roughly equal to the offer made to a third party. *See* D.C.Code § 42–3404.05(a–1). Furthermore, there is no requirement in the statute that such an offer be based upon the property's use as a rental unit. For example, as the appellant conceded during oral argument, if the rental property is zoned for a more financially lucrative

---

unduly interfering with the rights of property owners to the due process of law;

(2) To preserve rental housing which can be afforded by lower income tenants in the District;

(3) To prevent lower income elderly tenants from being involuntarily displaced when their rental housing is converted;

(4) To provide incentives to owners, who convert their rental housing, to enable low income non-elderly tenants to continue living in their current units at costs they can afford;

(5) To provide relocation housing assistance for lower income tenants who are displaced by conversions;

(6) To encourage the formation of tenant organizations;

(6a) To balance and, to the maximum extent possible, meet the sometimes conflicting goals of creating homeownership for lower income tenants, preserving affordable rental housing, and minimizing displacement; and

(7) To authorize necessary actions consistent with the findings and purposes of this chapter.

D.C.Code § 42–3401.02.

use—a mixed use retail and residential— and was offered for sale on the open market, the tenants would have to match a third party offer even if that offer was based upon the value of the property as a mixed use complex.

### B. Bona Fide Offer of Sale, No Third–Party Contract

■ In this case, however, there is no third-party contract: Phillips plans to demolish the property and rebuild. Therefore, we must determine what a "bona fide offer of sale" means when no third party contract exists. Appellant suggests that a bona fide offer of sale, when there is no third party contract, is one which reflects the market value of the property as rental housing; in its view, therefore, the $7.8 million offer based on Phillips' anticipated costs of buying an alternative property is counter to the stated purpose of the Rental Housing Conversion and Sale Act and not a bona fide offer of sale. Phillips contends, by contrast, that "bona fide" is a legal term of art and should be accorded its general and ordinary meaning. See, e.g., BLACK'S LAW DICTIONARY 177 (6th ed.1990). Thus, Phillips contends that any offer of sale made in objective good faith is a bona fide offer.

A simple Lexis search shows that the term "bona fide" has appeared in 271 of our published opinions in all variety of cases. While only a few of our opinions define the term, when read in context, it is clear that this court has adopted the plain meaning, common law definition of bona fide as articulated in BLACK'S LAW DICTIONARY, which defines the term as:

> In or with good faith; honestly, openly, and sincerely; without deceit or fraud. Truly; actually; without simulation or pretense. Innocently; in the attitude of trust and confidence; without notice of fraud, etc. Real, actual, genuine, and not feigned.

BLACK'S LAW DICTIONARY 177 (6th ed.1990) (citations omitted). See, e.g., Venison v. Robinson, 756 A.2d 906, 912 (D.C.2000) (discussing "bona fide purchaser"); Association of Am. R.R. v. Connerton, 723 A.2d 858, 862 (D.C.1999) (noting that "bona fide forgetfulness" is essentially negligence); West v. Morris, 711 A.2d 1269, 1271 (D.C. 1998) (discussing the requirements to demonstrate that a person is a "bona fide" member of a church); Pierola v. Moschonas, 687 A.2d 942, 949 (D.C.1997) (an effective accord and satisfaction requires the dispute be "bona fide" or honest). Good faith, however, is not a purely subjective notion involving the proverbial actor with a pure heart and empty head. In defining "bona fide" in the criminal law context, we have concluded that "[a] *bona fide belief* must have some *reasonable basis* before an accused can claim that such a belief exonerates his behavior." *Hemmati v. United States,* 564 A.2d 739, 745 (D.C. 1989) (emphasis added) (quoting *Jackson v. United States,* 357 A.2d 409, 411 (D.C. 1976)) (citation omitted); *see also Gaetano v. United States,* 406 A.2d 1291, 1293 (D.C. 1979); *Smith v. United States,* 281 A.2d 438, 439 (D.C.1971) ("[a] bona fide belief must have some justification—some reasonable basis."). All of these cases, and countless others, adopt and apply the common law, plain meaning of bona fide as defined in BLACK'S, and—absent some indication that the legislature intended a different meaning—we see no reason to depart from this long-line of precedent.

■ The overall structure of the Act supports the conclusion that the offer does not have to reflect appraised value or market value to be "bona fide." Section 42–3404.05, which controls contract negotiations between a building's owners and tenants under the Rental Housing Conversion and Sale Act, requires that the parties engage in good faith contract negotiations.

Under this section, an offer which does not "substantially conform with the price and terms of a third-party contract" is prima facie evidence that the offer was not made in good faith. *Id.* This provision does not require that the offer to the tenants be based on market value, appraised value, or the value of the building as rental housing, rather it only requires that the offer be based on what a third party is willing to pay. While this section is silent on what constitutes good faith bargaining in contract negotiations where there is no third party, the provision nevertheless, requires that such bargaining be conducted in good faith. Thus, the structure of the Act supports the conclusion that "bona fide offer of sale" simply requires an objectively good faith, honest offer of sale.

Furthermore, if the Council had wanted "bona fide" to have a special meaning or wanted specific factual criteria or factors to be considered in assessing objective good faith, it was well within its ability to do so, as it had done in other places in the Code. In fact, the Council has placed a modifier on the term "bona fide" in another provision of the D.C.Code dealing with real property. D.C.Code § 42–1903.02(b)(1), which governs the validity of management and other on-going contracts entered into by the "declarant" of a condominium, states that any such contract will be valid if "such contract ... is bona fide and is commercially reasonable to the unit owners ...." *Id. See also* D.C.Code § 31–3301.01(3) (2001) (establishing a six-part test to identify a "bona fide association" though which health insurance can be sold to employees or individuals); § 38–1205.10(c), (d) (providing factors for determining when an individual is a "bona fide resident of the District of Columbia" and thus entitled to preferential tuition rates at the D.C. School of Law). While these provisions are not part of the Act at issue in this case, they clearly indicate that the Council knew how to give "bona fide" a special meaning when it deemed necessary.

Additionally, despite appellant's argument otherwise, nothing in the legislative history of the Rental Housing Conversion and Sale Act supports the contention that "bona fide offer of sale" requires anything more than objective good faith. In fact, contrary to appellant's argument, the legislative history further supports the conclusion that "bona fide" should be given its plain and common meaning. When the Bill 3-22 was referred out to the D.C. COUNCIL COMMITTEE ON HOUSING AND ECONOMIC DEVELOPMENT, *supra,* the bill contained three provisions detailing when an offer is bargained for in good faith.[2] One of these provisions dictated the price at which the owner must offer the property to the tenants. This provision stated:

(c) *Price.* The owner shall not require the tenant to agree to a price greater than appraised value unless justified by a material advantage or material concession by the owner with respect to other terms. Appraised value is established by an independent appraisal under contemporaneous zoning, building or occupancy permits and rights to convert to another use. If more than one independent appraisal is available, value is established by the average. The owner may require up to ten (10) percent above appraised value if a contract with a third party substantiates such a price.

*Council Report, supra,* at 26. However, this provision was not part of the final bill that was approved by the Committee and then the codified. Thus, it is reasonable to assume that in rejecting the appraisal approach of determining value, the Council

---

**2.** Two of these provisions are now codified at    D.C.Code § 42–3404.05.

expressly rejected placing additional limitations, beyond the requirement of a good faith offer, on the price at which the property must be offered to the tenants. The rejection of this provision without any alternative formulation for determining value strongly suggests that the Council did not feel it was necessary to provide such a formula for calculating a proper "bona fide offer of sale" and we see no reason to read into a statute language that is clearly not there. *See Iselin v. United States*, 270 U.S. 245, 251, 46 S.Ct. 248, 70 L.Ed. 566 (1926) (noting that supplying statutory language "transcends the judicial function."). Based on the foregoing discussion, we find no merit to appellant's contention that the legislative history [3] supports a finding that "bona fide offer of sale" should be accorded a definition other than the plain, common law definition adopted by this court in countless cases. Additionally, reading the statute by applying the plain meaning of the terms is not counter to the purpose of the statutory construction provision of the statute, which requires that the statute be construed in favor of tenants rights over that of the owner/landlord *only* when the statute is ambiguous.[4]

### C. The Phillips Offer

■ In entering judgment for Phillips, the trial judge applied the definition of a bona fide offer of sale articulated in this opinion. It remains for us to determine, therefore, whether her finding that Phillips' offer met the statutory definition is supported by the record. *See* D.C.Code § 17–305 (2001). We hold that it is. The judge considered, as she was obliged to, the specific circumstances of this case. *See DCM Inv. Corp. v. Pinecrest Inv. Co.*, 34 P.3d 785, 789 (Ut.2001). She found that Phillips' offer of sale to the Tenants' Association was based upon an objectively fair analysis of the value of the property to Phillips based on its intended use. As opposed to being turned into condominiums or into a retail development, which might have a more easily ascertainable tangible financial value to the owners, the 1618 property had a unique value to Phillips because the space was located adjacent to the existing building and would provide more space for its collection by creating the Art Study Center. Phillips realized that if it was unable to use the 1618 property for this intended purpose, it would have to acquire a property with characteristics that gave the 1618 property its unique value. For example, Phillips needed a building that was in close proximity to the 1600 lot, which would provide for expansion and easy access between the two buildings, and that had sufficient square footage and was zoned in a suitable manner. The Phillips found such a building at 2012 Massachusetts Avenue, N.W., which Phillips believed it could acquire for $7.8 million after discussions with the own-

---

3. Appellant cites to a colloquy in the legislative history which discusses the purpose of the bill. After reviewing the colloquy, it is clear that it provides no guidance on whether the Act requires an interpretation of "bona fide offer of sale" as anything more than good faith.

4. Despite the great weight of our case law that finds the term "bona fide" to be unambiguous on its face, and the structure of the Act which further bolsters that conclusion, appellant asks us to rely on a line of cases interpreting the Petroleum Marketing Practices Act (PMPA), 15 U.S.C. § 2801–06 to support their proposition that "bona fide" is ambiguous and must be construed according the legislative history and context to determine their meaning. We disagree. These cases interpret a very different legislative scheme, and in light of our discussion of the Rental Housing Conversion and Sale Act and related statutory provisions, interpretations of the PMPA do not persuade that the Council intended more than the ordinary meaning of bona fide.

ers. Therefore, based on this assessment, Phillips offered the 1618 property to the tenants for $7.8 million. This offer was made after Phillips carefully considered all available options and was based on concrete facts. Given the unique circumstances that exist in this case, the trial judge did not err in finding that Phillips' offer was made in good faith and was thus a "bona fide offer of sale" under the statute. Therefore, the judgment of the trial court is affirmed.

*So ordered.*