**DISTRICT OF COLUMBIA, Petitioner,**

v.

**NATIONAL PARKS ASSOCIATION,
Respondent.**

**No. 24026.**

United States Court of Appeals,
District of Columbia Circuit.

Argued Dec. 4, 1970.

Decided April 27, 1971.

**964**

Mr. Henry E. Wixon, Asst. Corporation Counsel, with whom Messrs. Hubert B. Pair, Acting Corporation Counsel at the time the brief was filed, and Robert C. Findlay, Asst. Corporation Counsel, were on the brief, for petitioner. Mr. Charles T. Duncan, Corporation Counsel at the time the record was filed, also entered an appearance for petitioner.

Mr. James B. Blinkoff, Washington, D. C., for respondent. Mr. David E. Birenbaum, Washington, D. C., was on the brief for respondent.

Before VAN DUSEN,* Circuit Judge, U. S. Court of Appeals for the Third Circuit, and MacKINNON and WILKEY, Circuit Judges.

*Sitting by designation pursuant to Title 28, U.S.Code § 291(a) (1964).

1. National Parks Association v. District of Columbia, 98 D.W.L.R. 49 (1970).

**PER CURIAM:**

The District of Columbia appeals from a decision of the District of Columbia Tax Court cancelling a $2,706.00 real property tax assessment for the fiscal year 1969 against a building belonging to the National Parks Association.[1]

Late in 1967 the Association purchased its Washington headquarters building from another institutional owner and applied to the District for exemption from real property tax. Upon being refused, the Association brought suit on its assessment in the Tax Court, claiming that it fell within the scope of 47 D.C.Code § 801a, which provides:

> The real property exempt from taxation in the District of Columbia shall be the following and none other:
>
> \* \* \* \* \* \*
>
> (h) Buildings belonging to and operated by institutions which are not organized or operated for private gain, which are used for purposes of public charity principally in the District of Columbia.[2]

The issues in the Tax Court revolved for the most part around the scope to be given the word "charity" and the meaning of the expression "principally in the District of Columbia" as these were used in the above-quoted provision. Noting that it was faced with a close question, the Tax Court nevertheless found for the Association, saying that "[t]he decision would have gone to [the District] if at any point in the research —legislative history, precedents, analogies, other exemption provisions showing legislative purpose—a reasonable basis had been found for strict construction of section 1(h) of the Act of December 24, 1942."[3]

However, without deciding whether § 801a(h) should be strictly construed, we find compelling reason in the legislative

2. This provision is found in the Act of 24 December 1942, defining real property exempt from taxation in the District of Columbia, 47 D.C.Code § 801a et seq.

3. 98 D.W.L.R. 49, 53.

history and the express terms of the Act for excluding the building of the National Parks Association from that provision. For regardless of the way in which it is construed, § 801a(h) must be read in conjunction with § 801a(k), specifically exempting from taxation buildings belonging to numerous named institutions, in the main scientific or educational in character, and "buildings belonging to such similar institutions as may be hereafter exempted from such taxation by special Acts of Congress."[4]

Treating subsection (k), the Tax Court summed up its impact upon the remaining provisions of the Act in this way:

The naming of certain specific exemptions thus took care of some of the organizations ("institutions") which considered that they had a problem at the time of the 1942 Congressional hearings, and preserved their special interests. Congress thus specifically used one of the two procedures by which exemption may be obtained: exemption "by special Act of Congress." This was done "in order that there may be no misunderstanding." *Nothing in such Congressional action derogates the other procedure: construction by the taxing authorities and the courts of the exemptions given in general terms by subdivisions (f) through (j) of section 1 of P.L. 846.* (Emphasis added.)[5]

■■ Our own review of the legislative history to the Act convinces us that § 801a(k) does more than take care of a few deserving organizations that "considered they had a problem at the time of the 1942 Congressional hearings." We find that the insertion of this provision into the Act reflected Congress' inability to derive suitable generalized language covering institutions, for the most part educational or scientific in nature, that were felt deserving of tax-exempt status while at the same time excluding those that, although capable of effectively pleading a scientific or educational character, were considered properly subject to taxation. And we find that the final expression of § 801a(k), including within its scope "buildings belonging to such *similar institutions* as may be hereafter exempted from such taxation *by special Acts of Congress*" (emphasis supplied), far from being redundant as the Tax Court would have it, means just what it says—that institutions not otherwise exempt who are similar to those named in the body of the provision must seek real property tax exemptions from Congress.[6]

4. The full text of 47 D.C.Code § 801a(k) is as follows:

§ 801a. The real property exempt from taxation in the District of Columbia shall be the following and none other:

(k) Buildings belonging to and used in carrying on the purposes and activities of the National Geographic Society, American Pharmaceutical Association, the Medical Society of the District of Columbia, the National Lutheran Home, the National Academy of Sciences, Brookings Institution, the American Forestry Association, the American Tree Association, the Carnegie Institution of Washington, the American Chemical Society, the American Association to Promote the Teaching of Speech to the Deaf, and buildings belonging to such similar institutions as may be hereafter exempted from such taxation by special Acts of Congress.

(The American Tree Association was added to the list of § 801a(k) by special Act of Congress on 9 April 1943.)

We are of the opinion that the National Parks Association does not come within the class of institutions which Congress intended to exempt by section (h) and this intent emerges very clearly from the fact that Congress found it necessary to specifically exempt in section (k) the American Forestry Association which testimony in the Committee hearings indicated is the same type institution as the National Parks Association. (*See* text at 9 *infra*.)

5. 98 D.W.L.R. 49, 53.

6. The decision of the Tax Court totally ignores the concluding language of § 801a(k), and hence does not consider its impact upon the exemptions allowable under the general provisions of the Act. Accordingly, its assertion that "[n]oth-

Certainly it is true that the District of Columbia Committee initially wished to draft in generalized terms the provisions of the Act relating to institutions whose buildings would be exempt from taxation. Senator McCarran, then the Chairman of the Committee, opened the hearings on these provisions with the following:

> There are two methods of approach, the one is by specific legislation naming the institution and declaring it by law to be exempt. Personally I do not favor that form of legislation at all at any time because it savors of class legislation for a specific individual or a specific purpose. I would rather see legislation by general terms clearly defined permitting the executives of the law to apply good common sense, to exempt that which should be exempted and to impose taxes where taxes should be imposed.[7]

But it was not long before the suggestion was made that this goal perhaps could not be realized. Counsel for the Special Committee for the District of Columbia Bar Association testified that the drafting of suitable generalized language would be found impossible and recommended that deserving institutions for whom generalized language could not be framed be specially exempted. He said:

> The big difficulty seems to us exists in the District of Columbia in tax-exemption legislation arises (sic) because of the presence in the District of Columbia of a rather wide variety of national associations, quasi-religious, * * * quasi-charitable, quasi-educational, and quasi-scientific institutions which maintain themselves in the District of Columbia as far as headquarters are concerned and yet which are operated throughout the nation.
>
> * * * * * *
>
> With that in mind and recognizing the full force of the chairman's statement that special legislation is undesirable and recognizing the desirability insofar as humanly possible to include these exemptions in classifications rather than by individual instances, the bar association directors nevertheless felt and the committee felt that your committee is going to reach the conclusion that in certain instances it may be necessary by a special clause in this bill to list or identify certain individual institutions

ing in such Congressional action [*i. e.,* providing special exemptions for named institutions in § 801a(k)] derogates the other procedure: construction by the taxing authorities and the courts of the exemptions given in general terms by subdivisions (f) through (j) of [the Act]" rests on a hazy foundation. As is developed later in this opinion, *see* text at p. 965 *infra,* the language not considered by the Tax Court actually constitutes *an express derogation* of the power of the taxing authorities and the courts to construe the general provisions of the Act with respect to institutions "similar" to those set out in § 801a(k).

There is admittedly difficulty in drawing the line between those institutions covered by general provisions of the Act such as § 801a(h) and § 801a(k). To the extent that Congress unequivocally intended to include an institution within the narrow limits of § 801a(k)—as pointed out in n. 12, *infra,* in determining what institutions are "similar" to those

named therein it is essential to closely analyze the congressional hearings regarding the peculiar characteristics of the named institutions—it did not intend such institutions to be covered by the general provisions. But where analysis of the hearings does not unequivocally show that Congress intended exemption of the institution in question to be subject to its own discretion under subsection (k), exemption under general provisions such as subsection (h) may be available.

The Tax Court opinion illustrates the complexities of fitting the National Parks Association within subsection (h). We have not gone into them here; suffice to say that they exist, and that the appellee does fall within subsection (k) as we have fully discussed.

7. Hearings on S. 2673 before the Committee on the District of Columbia, 77th Cong., 2d Sess., at 3 (1942).

which obviously should be exempted, * * * but who nevertheless, if the classification were broadened to include them, would be apt to spread open the field into a variety of national organizations who should not, from a local taxpayer's point of view, be exempted. * * * [8]

This testimony was challenged by the Chairman who at that point—still early in the hearings—was not ready to give up his objective of drafting generalized legislation "clearly defined permitting the executives of the law to apply good common sense, to exempt that which should be exempted and to impose taxes where taxes should be imposed," and he retorted:

> I take it through (sic) your familiarity with legislation and the method by which legislation is put through would advise you of the danger of that position? In other words, if you want to exempt a certain institution by name, well someone on the floor thinks he has an institution that is just as much a charitable institution as that you have named and he can make a good argument for it and the first thing you have the field wide open.[9]

But as the hearings wore on, the difficulties predicted by counsel for the Bar Association began to assert themselves. The attorney for the American Forestry Association, an institution that the District had returned to the tax rolls, testified with respect to the possibility of exemption under § 801a(j), pertaining to buildings "belonging to and operated by schools, * * * which embrace the generally recognized relationship of teacher and student," in these words:

> We take exception to the narrowness of that definition. * * * [A]nd we should like to see that section broadened to include educational institutions, as I believe we are, where-

by we do not disseminate knowledge by the means of the classroom.[10]

A similar experience was repeated with respect to the Brookings Institution, whose research facilities had been returned by the District to the tax rolls as not embracing a teacher-student relationship. Likewise, other institutions seeking exclusion from the tax rolls, such as the American Chemical Society, the American Pharmaceutical Association, the National Academy of Sciences, and the Carnegie Institute of Washington, testified to the value of their educational and scientific endeavors, though the knowledge was disseminated in other than the traditional manner.

Yet it was obvious that if generalized legislation were to be formulated exempting institutions broadly performing educational and scientific functions, such classification, as counsel for the District of Columbia Bar Association said, "would be apt to spread open the field into a variety of national organizations who should not * * * be exempted." The door would be opened for institutions thought by Congress undeserving of tax-exempt status perhaps successfully to prosecute a claim for exemption before executive or judicial bodies. Illustrative is the testimony of counsel for the National Rifle Association (neither specifically nor generally exempted in the final version of the Act):

> Here is an organization whose whole purpose is training in markmanship for the National Guard in time of peace and in time of war and which is serving a broadly patriotic purpose that no other organization is doing, and which is essentially right now directed toward the defense effort, *as essential as surgery and training in any other line.*
>
> In that sense I submit it is charitable, but *it could qualify some under the head of scientific,* and in the sense

---

8. *Id.,* at 11.

9. *Id.,* at 11–12.

10. *Id.,* at 69.

that there is no profit in it. (Emphasis added.)[11]

With respect to such institutions, Congress therefore turned to what appeared to be the only practical way to secure exemption to those thought deserving of such treatment: Following the recommendation of the Bar Association, it exempted by name in a separate section of the Act, § 801a(k), the favored institutions, and further provided that "similar institutions" may also be exempted "by special Acts of Congress." Congress thus reserved to itself the sole power to determine if additional institutions "similar" to those listed in § 801a(k) and not otherwise exempt should obtain exemption. An individual institution of this type must, under the express terms of 47 D.C.Code § 801a(k), apply to Congress for relief from taxation; and absent a legislative exemption, they are required to pay taxes. Neither the executive, i. e., the taxing authorities, nor the courts have power under the Act to exempt them.

The classification of "similar" institutions referred to in subsection (k) is a catchall classification encompassing those left-over institutions which fail to satisfy any other provision of the statute for exemption, yet which may possess, in some degree, characteristics of those institutions exempted elsewhere, plus additional characteristics of magnitude, purpose, or type which may recommend them to Congress as qualified for exemption.

 The only question that remains is whether the National Parks Association is not otherwise exempt and is an institution "similar" to the institutions listed in § 801a(k).[12] We find that it is, and thus its possible exemption is not to be determined by subsection (h).

In fact, it closely resembles the American Forestry Association in the scope and nature of its activities. At the congressional hearings on the Act, counsel for the latter testified that it was a nonprofit institution, educational and scientific in nature, regularly published magazines involving forestry, aided the Government in solving forestry problems, maintained a large library in the District, had and was supported in large part by a national membership. In the Tax Court, representatives of the National Parks Association testified that it was a nonprofit institution, educational and scientific in nature, published the monthly *National Parks Magazine,* received by all members, cooperated with the National Parks Service (an agency of the federal government) to protect and restore our open spaces and parks, maintained the Conservation Education Center at the Smithsonian, which gives lectures, exhibits motion pictures, and sometimes conducts field trips to the outskirts of the city, had and was primarily supported by a national membership.

All of its worthwhile activities may commend the National Parks Association to Congress as an institution fit for exemption from real property taxation, just as was the American Forestry Association. But it is not within our power, or that of the taxing authority, to make such exemption since it does not satisfy the requirements of section (h). As was the American Forestry Association which it resembles, the National Parks Association must be specially exempted by Congress under 47 D.C.Code § 801a(k) if it is to acquire a tax exempt status. Until it is so exempted it must pay the tax. The judgment of the District of Columbia Tax Court is therefore

Reversed.

---

11. *Id.,* at 65.

12. That an institution may be said broadly to be "similar" to those named in § 801a(k) does not require that it be exempted by special act of Congress if it falls squarely within the terms of any other subsection of the act. Also, since the institutions named in § 801a(k) are possessed of some varying characteristics, it is necessary to make a close analysis of the congressional hearings to ascertain the precise intent of this particular section. Congress in this subsection was legislating in a very narrow area.