DISTRICT OF COLUMBIA, Appellant,

v.

CATO INSTITUTE, Appellee.

No. 02–TX–403.

District of Columbia Court of Appeals.

Argued June 11, 2003.
Decided July 24, 2003.

Michael F. Wasserman, Assistant Corporation Counsel, with whom Arabella W. Teal, Interim Corporation Counsel, and Charles L. Reischel, Deputy Corporation Counsel at the time the brief was filed, were on the brief, for appellant.

John P. McAllister, with whom Theodore R. Groom was the on brief, Washington, DC, for appellee.

Before REID and WASHINGTON, Associate Judges, and KERN, Senior Judge.

WASHINGTON, Associate Judge:

The District of Columbia appeals a ruling from the trial court, which concluded that property located at 1000 Massachusetts Avenue, N.W., Washington, D.C., owned and used by the Cato Institute ("Cato"), should be exempt from real property tax under D.C.Code §§ 47–1002(8) and (18) (2001). The question before us is one purely of statutory interpretation. Af-

ter reviewing the legislative history, statutory scheme, and case law, we conclude that the building owned by Cato is not entitled to exemption from real property tax under D.C.Code §§ 47–1002(8) and (18).

## I.

The facts of this case are largely not in dispute and will only briefly be reviewed in order to assist in our statutory interpretation. The Cato Institute, originally called The Charles Koch Foundation, Inc., is named for the Cato letters, which were libertarian pamphlets that helped lay the philosophical foundation for the American Revolution. Cato's Articles of Incorporation state that it "is organized NOT for profit, but rather said corporation is organized exclusively for charitable, religious, educational and scientific purposes." The articles further state that "no part of the net earnings of the corporation shall inure to the benefit of, or be distributable to, its members, trustees, officers, or other private persons" and that "no substantial part of the activities of the corporation shall be carrying on of propaganda, or otherwise attempting to influence legislation, and the corporation shall not participate in, or intervene in (including the publishing or distribution of statements) any political campaign on behalf of any candidate for public office." Cato's activities include publication on a variety of public policy issues, holding conferences, and publishing a quarterly magazine. Cato's activities "focus primarily on the impact of the federal government's policies on the economy, education, and society."

As a nonprofit corporation devoted to public policy research and education, Cato is exempt from federal taxes under I.R.C. § 501(c)(3) and recognized as a "public charity" under I.R.C. § 509(a). Cato is also exempt from D.C. personal property tax,

income and franchise tax, and sales and use tax. D.C.Code §§ 47–1508(1), –1802.01(4), –2005(3), –2206(2) (2001). In 1996, Cato filed an application for exemption of real property taxes in the District of Columbia under D.C.Code §§ 47–1002(8) and (18) (2001) for a property located at 1000 Massachusetts Avenue, N.W., Washington, D.C. (denominated as Lot 58, Square 342). This property is Cato's headquarters and contains staff offices, meeting rooms, the F.A. Hayek auditorium, conference facilities, and a library. The District denied the application in a letter dated May 27, 1998, and Cato filed an appeal from this decision in the District of Columbia Superior Court. After hearing argument on cross-motions for summary judgment, Judge Cheryl M. Long granted summary judgment in favor of Cato, concluding that it should receive property tax exemption under the statute. The District now appeals the ruling of the trial court.

## II.

■ D.C.Code § 47–1002 states: "Only the following real property shall be exempt from taxation in the District of Columbia: ... (8) Buildings belonging to and operated by institutions which are not organized or operated for private gain, which are used for purposes of public charity principally in the District of Columbia..." On appeal, the District contends that Cato does not qualify for tax exemption of its real property taxes under this provision because (1) it is not a "public charity" and (2) its activities are not "principally in the District of Columbia." These questions present issues of statutory interpretation, which we review *de novo. See, e.g., District of Columbia v. Gallagher,* 734 A.2d 1087, 1090 (D.C.1999); *Ashton Gen. P'ship, Inc. v. Federal Data Corp.,* 682 A.2d 629, 632 (D.C.1996).

■ "As a threshold matter, we acknowledge the often stated axiom that 'the words of [a] statute should be construed according to their ordinary sense and with the meaning commonly attributed to them.'" *E.R.B. v. J.H.F.*, 496 A.2d 607, 609 (D.C.1985) (quoting *Davis v. United States*, 397 A.2d 951, 956 (D.C.1979)); *see also United States v. Goldenberg*, 168 U.S. 95, 102–03, 18 S.Ct. 3, 42 L.Ed. 394 (1897); *accord Gallagher*, 734 A.2d at 1090. "When the plain meaning of the statutory language is unambiguous, the intent of the legislature is clear, and judicial inquiry need go no further." *Id.* at 1091. While we first employ the plain meaning rule to our task of statutory interpretation, we have acknowledged that in certain circumstances it is appropriate to look beyond even the plain and unambiguous language of a statute to understand the legislative intent. *See generally, Peoples Drug Stores, Inc. v. District of Columbia*, 470 A.2d 751, 754 (D.C.1983) (citations omitted). "These exceptions to the plain meaning rule should not, however, be understood to swallow the rule completely." *Id.* at 755. This court has noted that "[t]here are strong policy reasons for maintaining the certainty, fairness, and respect for the legal system that the plain meaning rule engenders in most instances." *Id.* Therefore, this court will "look beyond the ordinary meaning of the words of a statute only where there are 'persuasive reasons' for doing so." *Id.* (quoting *Tuten v. United States*, 440 A.2d 1008, 1013 (D.C.1982)).

■ When interpreting statutes relating to tax-exemption, we must keep in mind that "[i]t is firmly established in the jurisprudence relating to the District's real property tax that exemptions from taxation are to be construed strictly against the party claiming an exemption." *National Med. Ass'n, Inc. v. District of Columbia*, 611 A.2d 53, 55 (D.C.1992). Fur-

thermore, "each type of tax has its own 'independent and distinct criteria for exemption.' It is therefore a separate question whether [Cato's] property is exempt from taxation under the District's property tax scheme." *District of Columbia v. Helen Dwight Reid Educ. Found.*, 766 A.2d 28, 32 (D.C.2001). Finally, it is well to remember the underlying principle of laws which exempt certain taxes; they are "based upon the theory that the Government is compensated for the loss of revenue by its relief from financial burdens which would otherwise have to be met by appropriations from other public funds, and by the benefits resulting from the promotion of the general welfare." *Bob Jones Univ. v. United States*, 461 U.S. 574, 590, 103 S.Ct. 2017, 76 L.Ed.2d 157 (1983) (quoting H.R.Rep. No. 1860, 75th Cong., 3d Sess., 19 (1938)).

*A. D.C.Code § 47–1002 (2001).*

We now turn to the history and language of D.C.Code section 47–1002. In or around 1940, the then commissioners of the District of Columbia began a review of every property on which no taxes were paid. The review was sparked by the District's need for additional operating funds due to the large presence of the Federal Government, which does not pay tax on the property it owns. *See* Senate Report No. 1634, 77th Cong., to Accompany S. 2804—Defining the Real Property Exempt from Taxation in the District of Columbia; House Report No. 2635, 77th Cong., to Accompany H.R. 7781—Defining the Real Property Exempt from Taxation, District of Columbia (hereinafter *House Report*). Following this review, two bills were introduced in Congress to deal comprehensively with the issue of property tax exemption in the District. *See* H.R. 7406, 77th Cong. (1942); S. 2673, 77th Cong (1942). The resulting Act, as amended and codified today, contains

twenty-five different provisions exempting real property from taxation in the District of Columbia. D.C.Code § 47–1002. The statute is much more detailed than most statutes that provide a tax exemption. For example, I.R.C. § 501(c)(3) exempts organizations from federal tax if they are "organized and operated exclusively for religious, charitable, scientific, testing for public safety, literary, or educational purposes, or to foster national or international amateur sports competition (but only if no part of its activities involve the provision of athletic facilities or equipment), or for the prevention of cruelty to children or animals ...." However, § 47–1002, rather than simply listing the types of organizations in a "laundry list," takes great care in defining and limiting the exemption to buildings which are owned by certain organizations and used for specifically identified purposes. For example, some of the exemptions under § 47–1002, which relate to nonprofit organizations, include:

(6) Art gallery buildings belonging to and operated by organizations which are not organized or operated for private gain, and are open to the public generally, and for admission to which no charge is made on more than 2 days each week;

(7) Library buildings belonging to and operated by organizations which are not organized or operated for private gain and are open to the public generally;

(8) Buildings belonging to and operated by institutions which are not organized or operated for private gain, which are used for purposes of public charity principally in the District of Columbia;

(9) Hospital buildings, belonging to and operated by organizations which are not organized or operated for private gain, including buildings and structures reasonably necessary and usual to the operation of a hospital;

(10) Buildings belonging to and operated by schools, colleges, or universities which are not organized or operated for private gain, and which embrace the generally recognized relationship between teacher and student ...

§ 47–1002(6)—(10).

Most of the twenty-five exemptions relate to various types of nonprofit organizations, with the remaining exemptions relating to various government properties. Of the twenty-five different categories, all are of a general nature, except two, § 47–1002(25), which deals with the D.C. Correctional Treatment Facility, and § 47–1002(11), which explicitly lists nonprofit organizations whose property is exempt. Some of the organizations listed within this latter category include the National Geographic Society, National Academy of Sciences, and the Brookings Institution.[1] Organizations can be added to this list of explicitly named organizations only by special acts of Congress. D.C.Code § 47–1002(11). We have not had many opportunities to interpret the various provisions in

---

1. The *House Report* states that this provision of the bill was included

> to provide for exemption from taxation, property belonging to and used in carrying on the purposes and activities of those organizations which, while not embracing the generally recognized relationship of teacher and student, yet carry on as a part of their activities the dissemination of information and data generally in the public interest. It is necessary in some of these cases that educational work in a broad sense be re-

sorted to in order to complete the work of the particular institute. These institutions are professional in character, some educational, and others dedicated to the advancement of the various sciences. They are national headquarters of national organizations.... Their purpose is to gather information and data to be furnished in one form or another to the public in general, but specifically to the membership which comprises their organizations.

*House Report* at 3.

this statute, and an even smaller number of cases have addressed the provision that is at issue in this case, subsection (8).

### B. Subsection (8)

There are two primary parts to subsection (8). First, subsection (8) enunciates the type of organizations whose buildings are exempt—those "institutions which are not organized or operated for private gain." The District makes no argument that Cato is not such an institution. Second, the subsection limits the exemption to those buildings "which are used for purposes of public charity principally in the District of Columbia." Thus, the subsection, on its face, states that an organization's real property taxes on a building will be exempt if the use of that building is for public charity principally in the District of Columbia.

Subsection (8), and specifically this latter phrase, has previously been examined in *National Med. Ass'n, supra,* 611 A.2d 53 and *Helen Dwight Reid Educ. Found., supra,* 766 A.2d 28. In *National Med. Ass'n,* a nonprofit corporation whose membership consisted of over 16,000 doctors practicing nationwide submitted an application for exemption of property tax for its headquarters building located in Washington, D.C. The mission of the Association, in part, was to "raise the standard of the medical profession and of medical education; to stimulate favorable relationships among physicians; to nurture the growth and diffusion of medical knowledge and the prompt universal delivery of the same . . . ." 611 A.2d at 54. To achieve its mission and goals, the Association sponsored conferences, meetings and major events in various cities throughout the country. It also published a monthly journal and issued news releases to newspapers throughout the country. The tax exemption was denied on the basis that the activities of the Association were not "principally in the District of Columbia" as required under the statute. On appeal, the Association argued that the statute only required "that the principal use of the building in the District be for the purposes of public charity" and that there was no "requirement that the activities of the organizations principally benefit the District." *Id.* at 55. The District, however, contended that "principally in the District of Columbia" relates to "public charity" and "thus requires that such charity impact 'principally' in the District." ' *Id.*

When examining the provision in *National Med. Ass'n,* this court looked not only to its structure but also the structure of the statute as a whole. With regard to the phrase itself, the court noted that

> in the clause at issue ("buildings . . . which are used for purposes of public charity principally within the District of Columbia"), the critical phrase "principally within the District of Columbia" is directly and plainly coupled with "public charity." Ordinary grammatical and syntactical usage squarely supports the statutory interpretation made by the District. Any other reading, such as that proposed here by NMA, would contravene both the rule of narrow construction and the plain meaning of § 47–1002(8).

*Id.* at 55. The court also noted, citing §§ 47–1002(6), -(9), -(10), -(12), and -(14), that based on the structure of the entire statute, it was clear that the "drafters were deliberate and specific about [the other] exemptions covering a full range of activities, as opposed to those reaching only activities within the District. . . . Thus, viewing the constitutive subsections together, one must conclude that the drafters specifically intended the geographic limitation clearly stated in § 47–1002(8)." *National Med. Ass'n,* 611 A.2d at 55–56.

The court ultimately concluded that the "exemption provided in § 47–1002(8) is limited to those buildings owned and operated by charitable institutions and used for purposes of *charity having its principal impact within the District of Columbia.*" *Id.* at 55 (emphasis added). *See also Helen Dwight Reid Educ. Found.*, 766 A.2d at 36–37. Although the parties parse out the various words of the phrase, "used for purposes of public charity principally in the District of Columbia" as two separate requirements under the statute, we believe that the more appropriate approach is to examine the words as one phrase, just as they are written. The words are *in pari materia* with each other, the entire subsection and the entire statute.

The question before this court is slightly different than that before the court in *National Med. Ass'n* and *Helen Dwight Reid Educ. Found.* Here, we are asked to determine whether the impact requirement simply requires an impact in the *District of Columbia* or must that impact *be for the residents of the District of Columbia.* In other words, we must determine whether Cato's activities, which focus primarily on impacting the federal government's policies on the economy, education and society by including creating, advocating and disseminating public policy proposals and conducting seminars, meetings and conferences on public policy issues, meet the requirement under the statute.

*C. Cato and § 47–1002(8).*

As we found in *National Med. Ass'n,* "public charity" and "principally in the District of Columbia" are phrases that are coupled together. In fact, "public charity" modifies "principally in the District of Columbia" and requires that the acts of public charity principally impact the District. Thus, to begin our analysis, we must attempt to define "public charity," a term which is not defined in the statute.

We begin by noting that after reviewing the legislative history, including statements of witnesses, testimony and Congressional reports, we find nothing that provides any concrete guidance on how the phrase should be defined. Thus, we cannot rely upon the legislative history in our interpretation. Cato relies primarily upon two cases from the United States Court of Appeals for the District of Columbia Circuit to support its contention that public charity has a broad meaning. In *International Reform Fed'n v. District Unemployment Comp. Bd.*, 76 U.S.App. D.C. 282, 131 F.2d 337 (1942), the District of Columbia Circuit was asked to determine whether a nonprofit organization was exempt from making unemployment contributions because they fell under the statutory exemption as a "corporation, community chest, fund or foundation, organized and operated exclusively for religious, charitable, scientific, literary, or education purposes, or for the prevention of cruelty to children or animals ...." *Id.* 76 U.S.App. D.C. at 283, 131 F.2d at 338 (quoting 49 Stat. 946, Sec. 311(b)(7) T.8, Supp. V, D.C.Code; 49 Stat. 1888, Sec. 311(b)(7), Supp. V, D.C.Code). The court held, based upon the structure of the statute, that limiting "charitable" organizations to those whose "principal objectives are to provide for the poor, the sick, and the needy," was "too narrow and restricted a formula." *Id.* 76 U.S.App. D.C. at 284, 131 F.2d at 339. The court relied upon the listing of the various terms in the statute to assist in defining the term charitable. While this case is helpful in defining the terms charity and charitable, our statute requires an interpretation of the term "public charity." Even if we were to adopt the broad definition of charity expounded upon in *International Reform Fed'n,* that definition must be narrowed in our case, because the term

"charity" is modified by "public." Cato's reliance on *District of Columbia v. Friendship House Ass'n,* 91 U.S.App. D.C. 137, 198 F.2d 530 (1952) is equally unpersuasive. Although the D.C. Circuit in *Friendship House,* in deciding whether a nonprofit should be exempt from real property tax under the same statute as the one we are asked to interpret, cited to *International Reform Fed'n* as analogous to the discussion of the concept of public charity, the court did not define, or even attempt to define the term public charity. We can find nothing in the *Friendship House* case that adopts the broad definition of charity as being the same definition of "public charity." Furthermore, when examining the *Friendship House* case, it is not even a close question as to whether the nonprofit in *Friendship House* was a public charity; it clearly operated to benefit and impact citizens of the District of Columbia.

In fact, these cases are more supportive of the District's position that public charity should be construed narrowly. It is clear that the terms charity and charitable, when defined using a "laundry list" of terms, had a broad meaning at the time the statute in question was drafted. If Congress wanted such a broad definition of public charity, they could have simply used the tried and tested phrase "organized and operated exclusively for religious, charitable, scientific, literary, or education purposes, or for the prevention of cruelty to children or animals." Congress' decision not to use this phrase is an indication that the term public charity was not intended to have the same broad definition that accompanies this expansive list. This is further supported by the structure of § 47–1002. As discussed earlier, § 47–1002 has separate provisions for buildings used by religious organizations, libraries, and schools. D.C.Code §§ 47–1002(7), (10), and (12). Thus, the definition of

charity and charitable, based on the "laundry list" of organizations, cannot be the same as the definition of "public charity" because the statute itself provides separate provisions and exemption requirements for the various organizations that are within the "laundry list." If we were to conclude that "public charity" had the same definition as "charity" it would make most the subsections of § 47–1002 redundant and unnecessary. *Office of People's Counsel v. Public Serv. Comm'n,* 477 A.2d 1079, 1084 (D.C.1984) (noting that a statute should be construed so that no part of the statute is either redundant or superfluous).

Just as the reliance on these cases is misplaced, so too is the reliance upon other D.C. statutes, which provide insight on the general definition of charity. *See, e.g.,* D.C.Code § 47–1508(a)(1) (declaring that "[t]he personal property of any corporation, and any community chest fund or foundation, organized exclusively for religious, scientific, charitable or educational purposes" is exempt from tax); § 47–1802.01(4) ("Corporations, and any community chest, fund, or foundation, organized and operated to a substantial extent within the District, exclusively for religious, charitable, scientific, literary, or educational purposes, or for the prevention of cruelty to children or animals" are generally exempt from taxation). We must assume if Congress wanted such a broad meaning of the term charity, it would not have placed the modifier "public" in front of it, or it would have used the "laundry list" of terms. Furthermore, the simple fact that Cato has been granted "public charity" status by the Internal Revenue Service under I.R.C. § 509(a) provides virtually no guidance as to whether it is a "public charity" within the meaning of the statute in question because that provision of the code did not exist until 1969, more than

two decades after the statutory provision in question was created.

 Finding no guidance in the case law, statutory scheme, or legislative history, we find the only reasonable definition of "public charity" is the one provided from the BLACK'S LAW DICTIONARY that was in effect at the time the statute was drafted. BLACK'S LAW DICTIONARY defined the term public charity as follows:

> In this phrase the word "public" is used, not in the sense that it must be executed openly and in public, but in the sense of being so general and indefinite in its objects as to be *deemed of common and public benefit.* Each individual immediately benefitted may be private, and the charity may be distributed in private and by a private hand. It is public and general in its scope and purposes, and becomes definite and private only after the individual objects have been selected.

BLACK'S LAW DICTIONARY 313 (3d ed.1933) (emphasis added). While this definition does not provide us with the exact scope of what activities should be considered "public charity"[2] it is clear that any such activities must confer common benefits to the public; thus we need not go further for our analysis. With this basic understanding, it is reasonable to read the phrase "purpose of public charity principally in the District of Columbia" as limiting the exemption under § 47–1002(8) to only those buildings, operated by charitable institutions, which are used for purposes of charity which principally benefits the public within the District.

 In this case, given the limitation noted above and the voluminous record before us, we must conclude that no reasonable fact finder could conclude that Cato met the exemption requirements under § 47–1002(8). *See Joeckel v. DAV*, 793 A.2d 1279, 1281 (D.C.2002) ("We review the grant of a motion for summary judgment de novo" and apply the same standard of review as the trial court. "A motion for summary judgment should be granted whenever the court concludes that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.") (citations omitted). Cato's use of its building has only a minimal impact and public benefit to the residents of the District. Cato is "a nonprofit corporation devoted to public policy research and education with the goal of promoting a civil society, individual liberty and peace." It accomplishes these goals primarily by sharing its research and publications with members of Congress and individuals in the Executive Branch of government. The sharing and dissemination of information to people in or of the District of Columbia does not by

---

**2.** However, BLACK'S expounds on the definition of public charity by noting:

> A "purely public charity" which the Legislature is authorized to exempt from taxation is a charity which is indiscriminately dispensed to some portion or group of the public without profit or gain to the donor, and *two outstanding qualities are essential:* First that the ends accomplished are wholly benevolent and are accomplished without profit or gain to itself through absolute gratuity; and, second, that the beneficiaries must be saved from becoming burdens upon society and the state.

> A gift to be applied consistently with existing laws for the benefit of an indefinite number of persons, by brining their minds under the influence of education or religion, by relieving their bodies from disease, suffering or constraint, or by assisting them to establish themselves in life, or by erecting and maintaining public buildings or works, or otherwise lessening the burdens of government.

BLACK'S LAW DICTIONARY, *supra*, 313 (internal citations omitted).

itself demonstrate an impact within the District of Columbia; it is simply an activity that occurs within the District. There must be some evidence that through the use of Cato's building and the dissemination of such information there is a benefit, which inures principally to the public in the District. In this case, Cato's publications and activities "focus primarily on the impact of the federal government's policies on the economy, education, and society." While this focus tangentially impacts the District, the residents of the District are clearly not principally impacted by Cato's work. The simple fact that the activities occur within the District does not mean they have a substantial impact within the District.

This analysis is consistent with at least part of the legislative history of the statute. As noted previously, D.C.Code § 47–1002(11) provides an explicit list of organizations which are exempt from real property tax within the District of Columbia. The list is exclusive and other organizations can be included only by special acts of Congress. Within that list is the Brookings Institution, which Cato, in pleadings before the trial court, has identified as being an organization similar to itself. In *District of Columbia v. National Parks Ass'n*, 144 U.S.App. D.C. 88, 90, 444 F.2d 963, 965 (1971), the United States Court of Appeals for the District of Columbia Circuit noted that after reviewing the legislative history, it found "that the insertion of this provision into the Act reflected Congress' inability to derive suitable generalized language covering institutions, for the most part education or scientific in nature, that were felt deserving of tax-exempt status while at the same time excluding those that, although capable of effectively pleading a scientific or educational character, were considered property subject to taxation." *Id.* Thus, if in fact the Brookings Institute and Cato are as similar as Cato suggests, even though the record does not contain evidence to support such a conclusion, then at the time the Act was passed, Cato would not have fallen into one of the generalized categories and would have been required to be listed in § 47–1002(11) in order to receive property tax exemption.[3]

For the foregoing reasons, the judgment of the trial court is reversed.

*So ordered.*

■

---

**3.** We note, however, that at the time the Act was passed, Brookings sought exemption under § 47–1002(10) as opposed to subsection (8) under which Cato now asserts exemption.