*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters. Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

## DISTRICT OF COLUMBIA COURT OF APPEALS

Nos. 17-AA-662 and 18-AA-585

TALLEY R. HOLMES, JR., PETITIONER,

v.

DISTRICT OF COLUMBIA
DEPARTMENT OF HOUSING & COMMUNITY DEVELOPMENT, RESPONDENT,

and

1516 AND 1520 HOLBROOK STREET NE TENANTS ASSOCIATION, INC.,
INTERVENOR.

On Petition for Review of an Order of the
District of Columbia Department of Housing and Community Development
(RP-2017-27)
and an Order of the District of Columbia Office of Administrative Hearings
(DHCD-24-17-DR)

(Argued May 8, 2019            Decided July 9, 2020)

*William Payne* for petitioner.

*Sonya L. Lebsack*, Assistant Attorney General, with whom *Karl A. Racine*, Attorney General for the District of Columbia, *Loren L. AliKhan*, Solicitor General, *Caroline S. Van Zile*, Deputy Solicitor General, and *Stacy Anderson*, Acting Deputy Solicitor General at the time the brief was filed, were on the brief, for respondent.

*June L. Marshall*, with whom *Philip T. Evans* and *Cynthia A. Gierhart* were on the brief, for intervenor.

Before EASTERLY and MCLEESE, *Associate Judges*, and NEBEKER, *Senior Judge.*

EASTERLY, *Associate Judge*:  In these consolidated appeals, petitioner Talley R. Holmes, Jr. asks us to vacate and reverse two administrative orders:  (1) an order by the District of Columbia's Department of Housing and Community Development's Rental Conversion and Sale Division (DHCD) registering a tenant association in a building owned by Mr. Holmes and (2) an order by the Office of Administrative Hearings (OAH) making permanent a DHCD directive that Mr. Holmes cease and desist his attempt to evict any tenants until he complies with the Tenant Opportunity to Purchase Act (TOPA), D.C. Code §§ 42-3404.01 to .13 (2012 Repl. & 2019 Supp.).  We conclude that Mr. Holmes has failed to establish that he has standing to pursue his challenge to the first order.  Regarding the second order, we reject Mr. Holmes's argument that his TOPA offer of sale, prompted by a third-party offer to buy the housing accommodation, relieved him of the obligation to issue a separate TOPA offer of sale when he later decided instead to discontinue his use of the property as a housing accommodation.

## I. Facts

### A. The 2014 Contract for Sale and 2015 TOPA Notices

In September 2014, Mr. Holmes contracted with the C.A. Harrison Companies, LLC ("C.A. Harrison") to sell a sixteen-unit apartment building he owned at 1516–1520 Holbrook Street N.E., promising to deliver the units with marketable title. While the sale was pending, C.A. Harrison hired a company to contact the tenants then living in the building (nine units were occupied at that time) and to negotiate buyout agreements with them. Six tenants accepted the buyouts and vacated their units, and one tenant voluntarily moved out before the buyouts began. C.A. Harrison prepared to go to settlement by the end of July 2015, only to discover that Mr. Holmes was unable to deliver the units with marketable title because he had not first given the tenants an opportunity to purchase the property by providing them an offer of sale notifying them of the third-party contract as required by TOPA, specifically D.C. Code § 42-3404.02(a).[1]

---

[1] C.A. Harrison sued Mr. Holmes for breach of contract, as well as for negligent misrepresentation based on its allegation that Mr. Holmes had previously represented to C.A. Harrison that he had provided the TOPA offer of sale and "the tenants had declined to exercise their TOPA rights." *C.A. Harrison Cos., LLC v. Holmes*, No. 2016-CA-3685-R(RP) (D.C. Super. Ct. May 19, 2016). Mr. Holmes did not dispute that factual allegation.

Mr. Holmes eventually issued the requisite TOPA offer of sale in September 2015 to all the tenants of the nine units occupied at the time he signed the third-party contract with C.A. Harrison in September 2014.

## B. The Registration of the Tenant Association with DHCD

In response to the 2015 TOPA offer of sale, the tenants who had remained in the building attempted to form a tenant association.[2] The association timely applied to register with DHCD, as required by D.C. Code § 42-3404.11(1), but DHCD erroneously rejected the association's registration. Relying on the list of addressees to whom Mr. Holmes had belatedly provided TOPA offers of sale, DHCD determined that the association did not meet the requirements of D.C. Code § 42-3404.11(1), which provides that, *at the time of registration*, an association must comprise "a majority of the occupied rental units."

The association timely filed a petition for reconsideration with DHCD in December 2015, explaining that it currently represented a majority of the occupied

---

[2] This group called themselves 1516 & 1520 Holbrook Street NE Tenants Association, Inc. A different set of tenants, which included some who had moved off-site, also attempted to form a competing organization, but their efforts, which have no bearing on this case, were unsuccessful.

units at Mr. Holmes's building. DHCD ultimately granted the motion and registered the association in June 2017. At no time did Mr. Holmes assert any interest in or attempt to participate in the DHCD registration proceedings.

### C. Mr. Holmes's Attempt to Evict the Tenants and DHCD's Cease and Desist Order

In December 2016, while the association's petition for reconsideration was pending with DHCD, Mr. Holmes attempted to evict the remaining tenants by issuing notices to vacate the property. Mr. Holmes nowhere acknowledged in the notices to vacate his 2014 contract to sell the property to C.A. Harrison or C.A. Harrison's lawsuit, see *supra* note 1, in which C.A. Harrison sought enforcement of that contract as a remedy (or an award of money damages). Instead, Mr. Holmes certified that he was providing notices to vacate pursuant to D.C. Code § 42-3505.01(i)(1) (authorizing a housing provider to "recover possession of a rental unit for the immediate purpose of discontinuing the housing use and occupancy of the rental unit" if requisite notice is provided)—not D.C. Code § 42-3505.01(e) (authorizing a housing provider to "recover possession of a rental unit where the housing provider has in good faith contracted in writing to sell the rental unit or the housing accommodation" if requisite notice is provided). He further certified in the notice that he "no longer desire[d] to sell the property," and he

stated in his cover letter that the notice was "only for purposes of discontinuing housing use."

In response to Mr. Holmes's attempt to evict his tenants, DHCD issued a deficiency letter in January 2017 informing him that, among other issues with the building and notices to vacate, he had run afoul of TOPA.  DHCD explained to Mr. Holmes that a property owner could not issue notices to vacate for the discontinuance of housing use without first giving tenants an opportunity to purchase the housing accommodation through a TOPA offer of sale, and that he had to file that TOPA offer of sale with DHCD's Rental Conversion and Sale Division.  DHCD further explained that, although it had received "a[] [TOPA] offer of sale on September 23, 2016 [sic] relating to the *sale* of the property" (apparently referring to Mr. Holmes's 2015 offer of sale related to his 2014 contract to sell the building to C.A. Harrison), "to date," it had not received a requisite TOPA "offer of sale . . . relating to the discontinuance of housing use." In light of Mr. Holmes's noncompliance with TOPA and other statutory and regulatory obligations, the office informed him his notices to vacate were "void and must be withdrawn."

Because Mr. Holmes did not correct the deficiencies identified in DHCD's January letter, DHCD issued an order to Mr. Holmes in May 2017. The agency both directed him not to rely on his invalid notices to evict his tenants and notified him of its intent to seek a temporary cease and desist order to "prohibit[] [him] from discontinuing housing use or selling the Housing Accommodation" until he corrected the deficiencies and complied with TOPA. When Mr. Holmes still did not take action to comply with TOPA, the agency issued a temporary cease and desist order in June 2017.

Mr. Holmes responded to the temporary cease and desist order and requested a hearing before OAH. He argued that he had complied with TOPA by serving his tenants with the 2015 offer of sale with a third-party contract, and appeared to attribute DHCD's adverse decision to a misunderstanding that he was still trying to sell the housing accommodation to a third-party.

OAH rejected his arguments. It found that DHCD was well aware of the 2015 TOPA offer of sale and explained that DHCD was correct to require a new TOPA offer of sale because "the right to receive an offer of sale before discontinuance of use is absolute, and separate and distinct from the requirement to

receive an offer of sale before selling a property to a third-party contractor."[3] Citing and quoting the statute, D.C. Code § 42-3404.02(a-2), OAH elaborated that any TOPA offer of sale in relation to a third-party contract would require the owner to offer to sell the housing accommodation to the tenants "at a price and on terms 'as favorable' as its offer to a third party" and might not bear relation to the property's market value, whereas "[i]n the absence of a third party contract[,]" the owner's TOPA offer of sale "must be based on the *present* value of the property." Relying on this court's decision in *Morrison v. Branch Banking & Tr. Co.*, 25 A.3d 930 (D.C. 2011), OAH further explained that an owner of a housing accommodation must give their tenants a new TOPA offer of sale each time they have a third-party offer, even if the terms of the new third-party offer are for the same asking price. Concluding that Mr. Holmes had issued the notices to vacate for discontinuation of use as a housing accommodation without first providing the tenants a TOPA offer of sale in relation to that distinct intention, OAH made DHCD's cease and desist order permanent and enjoined Mr. Holmes from selling the property unless and until he complied with his TOPA obligations.

---

[3] OAH also concluded that the 2015 TOPA offer of sale had expired under D.C. Code § 42-3404.11(4). Because we conclude that OAH's first rationale is dispositive, see *infra* part II.B, we do not address that line of reasoning.

This consolidated appeal of both DHCD's order registering the tenant association and OAH's order (making permanent DHCD's temporary cease and desist order) followed.

## II. Analysis

### A. Mr. Holmes's Standing to Challenge His Tenants' Registration of Their Association

Mr. Holmes seeks to appeal DHCD's order registering the tenant association pursuant to D.C. Code § 42-3404.11 on the grounds that it took too long to resolve the association's motion for reconsideration and that the agency wrongly engaged in ex parte communications with C.A. Harrison. The association, however, challenges his standing to raise these claims. "Standing is a threshold jurisdictional question which must be addressed prior to and independent of the merits of a party's claims." *D.C. Appleseed Ctr. for Law & Justice, Inc. v. District of Columbia Dep't of Ins., Sec., & Banking*, 54 A.3d 1188, 1199 (D.C. 2012) (internal quotation marks omitted); *accord Grayson v. AT & T Corp.*, 15 A.3d 219, 229 (D.C. 2011) (en banc) (explaining that standing is assessed separate from the merits of the plaintiff's claim). Mr. Holmes "bears the burden to establish [his] standing" to pursue this claim. *UMC Dev., LLC v. District of Columbia*, 120 A.3d 37, 43 (D.C. 2015).

In assessing standing, the central "question is whether the person whose standing is challenged is a proper party to request an adjudication of a particular issue." *Grayson*, 15 A.3d at 229 (internal quotation marks omitted). At a minimum, a litigant must adequately allege that they suffered "an injury in fact." *D.C. Appleseed*, 54 A.3d at 1200 (internal quotation marks omitted). Such "injury must be an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical." *Id.* (internal quotation marks omitted). Additionally, the "litigant must show a substantial probability that the requested relief would alleviate its asserted injury." *Id.* (internal quotation marks omitted).[4]

---

[4] In support of his standing argument, Mr. Holmes relies in part on the judicial review provision of the District of Columbia Administrative Procedures Act (DCAPA). *See* D.C. Code § 2-510(a) (2016 Repl.) (authorizing "[a]ny person suffering a legal wrong, or adversely affected or aggrieved, by an order or decision of the Mayor or an agency in a contested case" to seek judicial review in this court). We do not understand him to argue that the statute provides him broader standing than our case law. Moreover, because we conclude that he cannot establish standing under our case law as an injured individual, see *infra*, we need not address the tenant association's argument that the judicial review provision in D.C. Code § 42-3405.09 (authorizing "any party" to an administrative proceeding under the Rental Conversion and Sale Act to seek judicial review under the DCAPA in this court) imposes a heightened standing requirement on Mr. Holmes.

Mr. Holmes, who never sought to participate in the DHCD proceedings regarding the registration of the tenant association,[5] argues he suffered injury and now has standing to challenge DHCD's delayed registration decision—and the information it considered in making that decision[6]—because of his status both as the owner of the tenants' housing accommodation and as a party to a contract to sell that property. Mr. Holmes relies on *D.C. Appleseed* where we concluded that the plaintiff-appellant had suffered sufficient injury as a result of being overcharged by its insurer, and thus had standing to challenge a determination by the insurer's regulator that surplus funds collected by the insurer were not illegally excessive. 54 A.3d at 1202. He argues "[b]y analogy, it should follow that . . . a housing accommodation owner clearly has an interest in holding [DHCD]

---

[5] It is unclear whether he would have been authorized to do so. Mr. Holmes did not address the question in his brief to this court, but the tenant association argues that not only is the statute silent about a homeowner's participation in the registration process, *see* D.C. Code §§ 42-3404.11, -3405.04, but also it expressly *prohibits* owners from "interfer[ing] with the right of a tenant or tenant organizer to . . . [engage in] [a]ny . . . activity reasonably related to the establishment or operation of a tenant organization." D.C. Code § 42-3505.06(d)(8).

[6] Mr. Holmes asserts that C.A. Harrison provided DHCD with information that resulted in the agency's ultimately granting the motion for reconsideration to help C.A. Harrison defend against Mr. Holmes's counterclaim in their separate litigation. His assertion about CA Harrison's motivations are not only speculative, *see D.C. Appleseed Ctr.*, 54 A.3d at 1200 (providing that injury in fact cannot be based on speculation or conjecture), but also unsupported by the record, such as it exists: C.A. Harrison initially provided information to DHCD regarding the tenant association's registration request in November 2015, seven months before it filed suit against Mr. Holmes and well before Mr. Holmes filed his counterclaims.

accountable for fits of misfeasance or clear abuses of discretion in administering the TOPA program when real estate properties valued in the millions of dollars are at risk of sitting idle and being prevented from entering the market."[7]

We fail to see how the circumstances of this case—either the relative positions of Mr. Holmes, the tenant association, or DHCD, or the allegations themselves—are at all analogous to *D.C. Appleseed*. Moreover, to the extent Mr. Holmes is arguing that he suffered financial harm because DHCD's "fail[ure] to act" from December 2015 to June 2017 on the tenant association's November 2015 motion for reconsideration "forced [him] to defend a lawsuit [by C.A. Harrison] at great expense," and "deprived [him] [of] selling the Housing Accommodation," he complains of problems of his own making. Mr. Holmes was "forced" to defend a lawsuit because of his own inaction before July 2015, not because of any event related to DHCD's delay in addressing the association's reconsideration petition.[8]

---

[7] Mr. Holmes also broadly argues that "a housing accommodation owner's status alone must be sufficient" to establish standing in any action relating to TOPA. We disagree; owners must establish their own standing in any action under statute or case law like any other person or party.

[8] As noted above, see *supra* note 1, C.A. Harrison sued Mr. Holmes for breach of contract and negligent misrepresentation. *C.A. Harrison Cos., LLC v. Holmes*, No. 2016-CA-3685 (D.C. Super. Ct. May 19, 2016). Without regard to the tenant association's registration status or any event after July 2015, the trial court granted partial summary judgment to C.A. Harrison, finding Mr. Holmes

(continued…)

Further, under his own theory, the DHCD's "failure to act" after November 2015 resulted in the effective denial of the tenant association's motion for reconsideration as of January 2016 and thus did not impede him from selling the property. And long before DHCD took any action countering his assumption that the rejection was final, Mr. Holmes decided (as evidenced by his December 2016 letter) that he "no longer desire[d] to sell the property." Accordingly, neither of the injuries Mr. Holmes alleges can give him standing now on appeal to challenge the proceedings resulting in the tenant association's registration.

For these reasons, we conclude Mr. Holmes has failed to establish he has standing to challenge DHCD's registration decision on appeal to this court.

_____

(…continued)
liable (1) for negligent misrepresentation because he falsely represented to C.A. Harrison that he had complied with TOPA before the July 2015 closing date and (2) for breach of contract because he had agreed in the contract to deliver marketable title, which required prior compliance with TOPA, at closing. *C.A. Harrison Cos., LLC v. Holmes*, No. 2016-CA-3685 (D.C. Super. Ct. Mar. 26, 2018). The court's ruling regarding appropriate relief is still pending.

## B. Mr. Holmes's Appeal from the Cease and Desist Order

Mr. Holmes separately appeals from the 2017 cease and desist order made permanent by OAH. This order rests on the conclusion by OAH (and DHCD before it) that in issuing his tenants notices to vacate in December 2016, Mr. Holmes violated TOPA because he had not first provided the tenants and filed with DHCD the requisite TOPA offer of sale based on his intention to discontinue use of the property as housing. *See* D.C. Code § 42-3404.02(a) (requiring a property owner give tenants a bona fide offer of sale before discontinuing housing use); D.C. Code § 42-3404.03 (requiring a property owner to notify tenants and the DHCD's Rental Conversion and Sale Division of the offer on the same day). Mr. Holmes contends that he had no obligation to provide his tenants with a second TOPA offer of sale before issuing the notices to vacate to discontinue use in 2017 because he had already given them a TOPA offer of sale in 2015 based on his third-party contract with C.A. Harrison.

As a matter of first impression, we hold, consistent with the DHCD's interpretation of the statute, that Mr. Holmes's first TOPA offer of sale based on his third-party contract with C.A. Harrison could not also serve as a TOPA offer of sale based on his intention to discontinue renting the property.

We review the provisions of TOPA de novo. The plain language of the statute controls, *Peoples Drug Stores, Inc. v. District of Columbia*, 470 A.2d 751, 753 (D.C. 1983) (en banc), but where we encounter ambiguity, we defer to reasonable interpretations of the statute made by the agency administering the statute, here DHCD. *Nunnally v. District of Columbia Metro. Police Dep't*, 80 A.3d 1004, 1010 (D.C. 2013). Any ambiguity we find in a provision of TOPA must be resolved "toward the end of strengthening the legal rights of tenants or tenant organizations to the maximum extent permissible under law." *Richman Towers Tenants' Ass'n v. Richman Towers LLC,* 17 A.3d 590, 601 (D.C. 2011) (quoting D.C. Code § 42-3405.11); *see also 1618 Twenty-First St. Tenants' Ass'n v. Phillips Collection*, 829 A.2d 201, 203 (D.C. 2003) (discussing D.C. Code § 42-3404.02 and observing that TOPA's "overarching purpose is to protect tenant rights").

In relevant part, TOPA requires that

> [b]efore an owner of a housing accommodation may sell the housing accommodation *or* issue a notice to vacate for purposes of demolition or discontinuance of housing use, the owner *shall* give the tenant an opportunity to purchase the housing accommodation at a price and terms that represent a bona fide offer of sale.

D.C. Code § 42-3404.02(a) (emphasis added). The statute's separation of those circumstances where an owner must provide a bona fide offer of sale with an "or" indicates that one circumstance (selling the housing accommodation) may not substitute for another (discontinuance of housing use) in the way Mr. Holmes urges. "When the word or is used in a statute, it is presumed to be used in the disjunctive sense, unless the legislative intent is clearly to the contrary." *Scott v. United States*, 672 A.2d 579, 581 (D.C. 1996) (internal quotation marks omitted); *accord Gay Union Corp. v. Wallace*, 112 F.2d 192, 197 n.15 (D.C. Cir. 1940) ("In statutory construction 'or' is to be given its normal disjunctive meaning unless such a construction renders the provision in question repugnant to other provisions of the statute.").

Here the legislature's intention to distinguish between the two scenarios— sale or discontinuance of use—is reflected and reaffirmed in the statute as a whole. Most importantly, the statute directs that, depending on the impetus for a TOPA offer of sale, an owner must employ different pricing mechanisms and incorporate different information. If prompted by a contract with a third party to sell a housing accommodation of five or more units, the owner must inform the tenants of the third-party offer, make a copy of the third-party offer available, D.C. Code § 42-3404.03(3), and extend an offer to sell the property to the tenants at "a price and

other material terms that are at least as favorable as those accepted by" the prospective third-party purchaser. D.C. Code § 42-3404.02(a-2)(1)(B)(i); *see also* D.C. Code § 42-3404.05(a)(1).[9] But if an owner wishes to discontinue use of the property as a housing accommodation, "[t]he sales price contained in the offer of sale shall be less than or equal to a price and other material terms comparable to that at which a willing seller and a willing buyer would sell and purchase the housing accommodation, or the appraised value of the housing accommodation as determined by this subsection." D.C. Code § 42-3404.02(a-1)(1); *see also* D.C. Code § 42-3404.02(a-2)(1)(B)(ii). Additionally, the conditions upon which a TOPA offer of sale potentially expires are different if the offer was prompted by the owner's desire to sell the housing accommodation (expiring after 360 days if the accommodation has not been sold) or to discontinue the property's use for housing (expiring after 360 days if the owner has not issued notices to vacate). *See* D.C. Code § 42-3404.11(4). More generally, TOPA offers of sale must be bona fide, but what constitutes a bona fide offer is defined differently under the statute depending on whether the owner wishes to sell the housing accommodation or discontinue its use as such. D.C. Code § 42-3404.03(a-2)(1)(b). Lastly, we

---

[9] The statute also affords a tenant or tenant association in this specific scenario a time-limited right of first refusal that is contingent on receipt of a copy of the third-party offer, D.C. Code § 42-3404.08, that the owner must disclose to the tenant pursuant to D.C. Code § 42-3404.03.

consider the purposes of the Rental Housing Conversion and Sale statute of which TOPA is a component. These purposes include "discourag[ing] the displacement of tenants through conversion or sale"; "strengthening the bargaining position of tenants" and "preserv[ing] rental housing which can be afforded by lower income tenants in the District"; and "encourag[ing] formation of tenant associations." D.C. Code § 42-3401.02(1), (2), (6). All these aims lead us to conclude that the legislature supported more notice for tenants, not less, and more opportunities for tenants to seek to purchase their rental homes in response to TOPA offers of sale, not fewer.

For these reasons, we hold that providing a TOPA offer of sale based on a third-party contract does not *also* satisfy an owner's obligation to provide their tenants with a TOPA offer of sale if and when the owner decides instead to discontinue use of the property as a housing accommodation. Thus, we affirm OAH's order concluding that Mr. Holmes violated his TOPA obligations and making DHCD's cease and desist order permanent.

*So ordered.*